IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHONTA E. CAROTHERS, O/B/O S.T.G., | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : |
| MARTIN O'MALLEY,[1] Commissioner of Social Security | : No. 21-cv-4346-RAL |
| Defendant | |

**RICHARD A. LLORET**  　　　　　　　　　　　　　　　　　　**March 8, 2024**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM OPINION

Plaintiff Shonta E. Carothers, on behalf of her minor daughter, S.T.G., filed an application for Child Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83, seeking benefits related to her daughter's depression. Ms. Carothers now challenges the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim. Doc. No. 10[2] at 1 ("Pl. Br."). After careful review, I find that the ALJ's decision is supported by substantial evidence and affirm.

## PROCEDURAL HISTORY

On June 20, 2019, Ms. Carothers filed a claim for Child Supplemental Security Income benefits under Title XVI of the Social Security Act on behalf of her minor

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as Defendant. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Unless otherwise indicated, all references to the electronically docketed record will be cited as "Doc. No. ____ at ____."

1

daughter. R. 107, 154–155. Ms. Carothers' application was denied at the initial level on November 13, 2019 (R. 113–116) and on reconsideration on July 29, 2020 (R. 117–119). Ms. Carothers requested a hearing before an ALJ which was held on December 1, 2020. R. 47–87. Both Ms. Carothers and her daughter, S.T.G., were represented by counsel and testified at the hearing. *Id.* Following the hearing, the ALJ issued a decision finding that S.T.G. was not disabled. R. 10–22. On August 2, 2021, the Appeals Council denied Ms. Carothers' request for review, making the ALJ's decision a final determination. *See* R. 1–6. Ms. Carothers then filed an appeal in this court. *See* Doc. No. 1.

## FACTUAL BACKGROUND

### A.   The Claimant's Background

S.T.G. was fourteen at the time of the ALJ's decision, making her an "adolescent" under the regulations. R. 14; Pl. Br. at 2–3. S.T.G. suffers from major depressive disorder R. 427. She has a history of self-harm, including multiple suicide attempts. She has received regular psychotherapy and psychiatric care since 2017. R. 425. In 2018, S.T.G. attempted suicide by taking her grandfather's blood pressure medication. R. 56. Following that incident, S.T.G. was hospitalized at Belmont Hospital for about a week. R. 56, 425, 313–345. On another occasion, S.T.G. was treated at the emergency room at the Children's Hospital of Philadelphia after taking several of her mother's lithium pills. R. 55. She attempted suicide on at least two other occasions in 2017 and 2019. R. 57, 70–71; 329, 466.

In November 2019, Avi Nires, Psy.D. performed a consultive examination. *See* R. 424–432. Dr. Nires noted that S.T.G. is at an "age appropriate" level in the areas of attending and completing tasks, interacting and relating with others, and moving about and manipulating objects (R. 430) and found no limitation in the area of health and

2

physical well-being. R. 432. However, in the area of caring for oneself, Dr. Nires noted that S.T.G. has "difficulty managing her depression despite [treatment]." R. 431. Dr. Nires found that S.T.G.'s "prognosis is fair, given that she continues to have outstanding symptoms of depression despite treatment." R. 428.

S.T.G. was prescribed Prozac and cyproheptadine but had stopped taking her medication by the time of her hearing. R. 64, 478. She told her doctor and mother that the medication made her feel tired (R. 64), however, she testified at the hearing that she only told her doctor that because she didn't think she had a problem and wanted to stop taking the pills. R. 83–84. S.T.G.'s therapy records from June 2020 indicate that she is continuing to make progress towards her goals and that she has shown some improvement. R. 722.

S.T.G. had been enrolled in cyber school for two years, but she returned to in-person school in 2019. R. 64. S.T.G. transitioned to cyber school initially because she had issues with skipping class and because she was a victim of bullying. R. 65. S.T.G. returned to online school in spring 2020 due to COVID-19-related school closures. In the fall of 2020, S.T.G. stopped attending school regularly and received straight Fs on her first report card of the new school year. R. 60. Ms. Carothers testified that S.T.G. would often fall asleep when she was supposed to be attending class. R. 66. S.T.G. testified that she did not feel motivated to log onto her classes and that she did not care that she received all Fs on her first report card of the year. R. 78.

B.  **The ALJ's Decision**

An individual under the age of eighteen is eligible for Child Supplemental Security Income if she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to

3

last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The ALJ evaluates a child's claim for benefits using a three step sequential analysis which assesses whether the child: (1) is engaged in substantial gainful activity; (2) has a severe physical or mental impairment or combination of impairments; and (3) has an impairment or combination of impairments that meets, medically equals, or functionally equals a Listing in the Social Security Listing of Impairments.[3] 20 C.F.R. § 416.924(b)–(d).

      Functional equivalence is determined by considering how the child functions in in six broad areas or domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* at § 416.926a(b)(1). An impairment functionally equals a Listing if the child has "marked" limitations in at least two domains, or an "extreme" limitation in at least one domain. *Id.* at § 416.926a(a). The ALJ will compare the child's functioning to children of the same age who do not have impairments, including how well the child initiates, sustains, and completes activities and how much help the child needs. *See id.* at §§ 416.924a(b)(1)–(9); 416.926a(b).

      In reaching his decision, the ALJ made the following findings of fact and conclusions of law. At step one, the ALJ determined that S.T.G. had not engaged in substantial gainful activity since her application date. R. 14. At step two, the ALJ

---

[3] The regulations contain a series of "Listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id.*

4

determined that S.T.G. had one severe impairment: major depressive disorder. R. 14. At step three, the ALJ compared S.T.G.'s impairment to those contained in the Listings and found that S.T.G.'s impairment did not meet or medically or functionally equate to the severity of one of the listed impairments. R. 14–18. With respect to functional equivalence, the ALJ determined that S.T.G. had no limitation in the areas of acquiring and using information, moving about and manipulating objects, and health and physical well-being; less than marked limitations in the areas of attending and completing tasks and interacting and relating with others; and a marked limitation in the area of caring for oneself. R. 15. The ALJ ultimately concluded that S.T.G. was not disabled during the relevant period. R. 18.

## STANDARD OF REVIEW

My review of the ALJ's decision is deferential. I am bound by his findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining if substantial evidence supports the decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's factual conclusion is supported by substantial evidence, his disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g); *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v.*

5

*Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (Katz, J.) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in his opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000). An ALJ must also address all pertinent evidence in the record. *See id.* at 121–22. When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain his resolution of the conflict. *Id.* at 121. As the Third Circuit observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999):

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the

6

evidence she rejects. *See Stewart v. Sec. of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

An ALJ's decision is to be "read as a whole." *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The question on review is whether, reading the ALJ's opinion as a whole against the record, the reviewing court can understand why the ALJ reached his decision and can identify substantial evidence in the record supporting that decision. *Caruso v. Comm'r. of Soc. Sec.*, 99 Fed. Appx. 376, 379 (3d Cir. 2004)).

## DISCUSSION

Ms. Carothers, through counsel, presents two issues for my review: whether "the ALJ erroneously found no limitation in using information and a less than marked limitation in attending and completing tasks despite compelling evidence that S.T.G.'s limitation in these areas are marked" (Pl. Br. at 8–13) and whether "the ALJ erroneously found only a marked limitation in caring for yourself despite substantial evidence that S.T.G.'s limitation in this domain is extreme[.]" *Id*. at 13–17. The Commissioner responds that his final decision was supported by substantial evidence and "where substantial evidence supports the ALJ's decision, the Court must give deference to the ALJ and affirm her findings, even if the Court would have decided the case differently." Comm. Br. at 2. I have reviewed the ALJ's decision, and I am satisfied that the ALJ's findings are supported by substantial evidence.

As noted above, when evaluating a child's disability, the ALJ must analyze whether a claimant has an impairment or combination of impairments that functionally equals a listing based upon an analysis of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with

7

others; (4) moving about and manipulating objects; (5) caring for yourself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

The ALJ found that S.T.G. had no limitation in the domain of acquiring and using information. R. 17. Ms. Carothers argues that the ALJ erred and should have found S.T.G.'s limitations in this area to be marked. Pl. Br. at 8–13. This domain considers how well a child acquires or learns information, and how well she can use the information she has learned. 20 C.F.R. § 416.926a(g). In finding no limitation in this domain, the ALJ acknowledged S.T.G.'s "9th grade report card shows primarily Fs" but found that "this is not surprising given the excessive number of absences and tardiness at school." R. 17. The ALJ noted that S.T.G. testified that she did not care about her poor grades and concluded that "her poor performance seems to be the result of poor motivation and poor effort" rather than "an actual intellectual impairment that would preclude the ability to acquire and use information adequately, if motivated to do so." R. 17. This finding is consistent with the record evidence. In his consultive examination, Dr. Nires reported that S.T.G.'s expressive and receptive language skills were age appropriate and that her intellectual functioning was estimated to be in the average range. R. 427. S.T.G. is not on an IEP or other special education plan. There is nothing in the academic and medical records I have reviewed which suggests S.T.G. has any intellectual or other impairment that would limit her ability to understand or express herself at an appropriate level. Accordingly, I find that the ALJ did not err in finding that S.T.G. had no limitation in this area of functioning and that his conclusion was supported by substantial evidence.

The ALJ concluded that S.T.G. has a less than marked limitation in the domain of attending and completing tasks. R. 17. This domain measures how well a child is able to

focus and maintain attention, and how well she begins, carries through, and finishes activities, including the pace at which she performs them and the ease in which she changes them. 20 C.F.R. § 416.926a(h). In reaching his conclusion that S.T.G. has a less than marked limitation in this area, the ALJ acknowledged that, while S.T.G. has "a mildly impaired memory and some impairment in attention and concentration, . . . [i]t is difficult to attribute the claimant['s] limitations in this domain to any specific medical impairments as opposed to her just not caring and, thus, not putting forth any effort." R. 17. Ms. Carothers argues that substantial evidence does not support the ALJ's finding that S.T.G. has a less than marked limitation in this area and asserts that the ALJ failed to consider all of the relevant evidence, including S.T.G.'s documented symptoms of depression. Pl. Br. at 8–13.[4] Ms. Carothers' position amounts to little more than a request for me to substitute the ALJ's determination with my own. If an ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g). I may not conduct *de novo* review of the Commissioner's decision or re-weigh evidence of record. *Chandler*, 667 F.3d at 359 (citing *Richardson*, 402 U.S. at 401) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").

The ALJ does not deny that S.T.G. has limitations in her ability to attend to and complete tasks but finds that her limitations are less than marked. While S.T.G. has a recent history of unexcused absences, her school records reflect that, when she does

---

[4] Ms. Carothers further argues that the ALJ failed to fully credit S.T.G.'s troubles with focusing on and attending school in his analysis of the area of "attending and completing tasks," despite having done so in the area of "caring for oneself." Pl. Br. at 11–12. However, the ALJ did not consider S.T.G.'s troubles attending school or declining school performance in finding that she had a marked impairment in the area of caring for herself. Rather, that conclusion was driven by S.T.G.'s prior suicide attempts and difficulties regulating her emotions. While it is true that a given impairment may have effects in more than one domain, Ms. Carothers appears to suggest that the ALJ's finding that S.T.G. has a marked limitation in the domain of "caring for oneself" necessarily requires a finding that she has a similar limitation in the domain of "attending and completing tasks." That is not the law.

attend school, she is able to work independently and get her work done. See R. 444, 522, 566. Contrary to Ms. Carothers' assertion, the ALJ does acknowledge that "[t]he claimant's diagnosis of depression is well documented and would interfere in her ability to concentrate." R. 14. This is consistent with Dr. Nires' finding that S.T.G.'s "attention and concentration were impaired" and that her "recent and remote memory skills were mildly impaired" due to emotionality. R. 427. A "marked" limitation will be found only when an impairment "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). There is evidence in the record that indicates S.T.G. is limited in her ability to attend to and complete tasks, but that her limitations do not rise to the level of a marked limitation. The fact that another conclusion may be drawn looking at the same information does not render the ALJ's determination erroneous. My review is limited to determining if substantial evidence supports the ALJ's decision. *Hartranft*, 181 F.3d at 360 (citing 42 U.S.C. § 405(g)). I therefore find that the ALJ's conclusion in this regard is supported by substantial evidence.

The ALJ found that S.T.G. had a less than marked limitation in the area of interacting and relating with others. This area considers how well the child initiates and sustains emotional connections with others, develops and uses the language of her community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). An adolescent should be able to initiate and develop friendships with same aged children, relate appropriately to other children and adults, and should be increasingly able to solve conflicts with peers, family members or adults outside the family. 20 C.F.R. § 416.926a(i)(2)(v). In finding that S.T.G. had a less than marked limitation in this

domain, the ALJ recognized that while S.T.G. exhibits "some social isolation at times," she has friends who she hangs out with. R. 18. This conclusion is consistent with the report of Dr. Nires which acknowledged that S.T.G. "has friends with whom she goes to the park and talks" and that her "hobbies and interests include going outside with her friends." R. 427. The ALJ's conclusion is supported by substantial evidence.

The ALJ found that S.T.G. had no limitation in moving about and manipulating objects. R. 18. This domain considers how well a child is able to move her body and objects. 20 C.F.R. § 416.926a(j). There is no evidence in the record indicating that S.T.G. suffers any functional limitation in this area. R. 16. This finding consistent with Dr. Nires' determination that S.T.G. is "age appropriate" with respect to her abilities in this domain. R. 431. Therefore, substantial evidence supports the ALJ's conclusion.

The ALJ concluded that S.T.G. had a marked limitation in her ability to care for herself. Ms. Carothers argues that this finding was in error and that the ALJ should have instead found an "extreme" limitation. Pl. Br. at 13–17. This area considers how well a child maintains a healthy emotional and physical state, including coping with stress and change, and whether a child takes care of her own health, possessions and living area. 20 C.F.R § 416.929a(k). As discussed, a "marked" limitation will be found when an impairment "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation will be found when an impairment "interferes very seriously" with the ability to independently initiate, sustain, or complete activities, and is reserved for the "worst" limitations. 20 C.F.R. § 416.926a(e)(3)(i). In concluding that S.T.G. had a marked limitation in this domain, the ALJ noted that she "has a history of multiple suicide attempts and gestures" and that "[t]he records establish difficulties regulating and controlling her emotions[.]"

11

R. 17. The ALJ acknowledged S.T.G.'s history of self-harm and suicide attempts, citing to several years of psychotherapy and psychiatry records. R. 17 (citing R. 401–412, 413–423, 519–590, 614–720, 721–807).

The cited records indicate that S.T.G. has a history of depression, self-isolation, suicidal ideation, and self-harm behaviors, but that she has shown improvement in her coping skills (R. 401) and has shown progress with regard to her social anxiety (R. 404) and focusing on her personal goals (R. 615). This is consistent with Dr. Nires' finding that S.T.G. has "depressed and sad moods with extreme irritability and anger, social withdrawal, loss of usual interests, and excessive crying" (R. 425) and that she has difficultly managing her depression, despite treatment. R. 431. While the records indicate that S.T.G. has serious limitations in her ability to care for herself, she maintains "normal sleep and appetite," denies any "general maladaptive behaviors," and is able to "dress, bathe, and groom herself at appropriate levels." R. 425, 427. The "extreme" limitation category is reserved for the "worst" cases. The medical and testimonial evidence supports the ALJ's determination that S.T.G. has significant limitations in her ability to care for herself. Because the ALJ's finding is supported by substantial evidence, I may not substitute my judgment to find that her limitations are "extreme" rather than "marked." I find that the ALJ committed no error at this step.

Finally, the domain of health and physical well-being considers the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on the child's health and functioning that were not considered in the child's ability to move about and manipulate objects. 20 C.F.R. § 416.929a(l). This finding is consistent with the record and Dr. Nires' determination that S.T.G. has no limitation.

My review at this stage is limited to determining whether the ALJ's decision was based on substantial evidence. As discussed above, the ALJ reviewed the evidence and determined S.T.G.'s level of impairment in six areas of functioning. Substantial evidence supports the ALJ's conclusion that S.T.G. did not have a marked limitation in two or more domains and did not have an extreme limitation in any of the six domains. Because the ALJ's finding that S.T.G. is not disabled was reasonably supported by substantial evidence, I will uphold his decision and deny Ms. Carothers' claim for relief.

## CONCLUSION

Because I find no error in the ALJ's analysis, the decision of the ALJ is affirmed, and the appeal dismissed. I will enter an Order and Judgment accordingly.

BY THE COURT:

*s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**